IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GARY BENNIS,

                      Plaintiff,                                OPINION & ORDER

  v.

                                                                         15-cv-479-jdp

ERIC KLEVEN,

                      Defendant.

---

     Defendant Eric Kleven is a private contractor who performs tax assessments for the Town of Garfield, Wisconsin. Plaintiff Gary Bennis owns 177 acres of mostly undeveloped property in the Town of Garfield. Kleven went on to Bennis's land to perform a tax assessment, and he discovered three small, elevated cabins, which resulted in a modest increase in the assessed value of Bennis's property. Bennis got the town to reduce the assessment, but now he is going after Kleven with this suit under 42 U.S.C. § 1983. Bennis contends that Kleven's entry and inspection of his property was an unreasonable search that violated the Fourth Amendment.

     Kleven has moved for summary judgment, Dkt. 20, contending that the inspection of Bennis's property was a legal property tax assessment, and that he did not conduct a search because he inspected Bennis's property only from open fields, without entering the cabins or their curtilage. Bennis may not have been properly notified of Kleven's inspection, and for purposes of this motion, the court will assume that the cabins are the equivalent of a residence in which Bennis had a reasonable expectation of privacy. But Bennis has not adduced evidence from which a reasonable jury could conclude that Kleven climbed the structures to enter the cabins or their curtilage. Thus, Kleven did not conduct a "search"

within the meaning of the Fourth Amendment, and the court will grant Kleven's motion for summary judgment.

UNDISPUTED FACTS

Bennis owns 177 acres of land in the Town of Garfield, Wisconsin. When he bought the land in 2009, the property had a few simple deer stands. By 2012, Bennis had built an open shed and six elevated structures. The parties have sometimes referred to these structures as "deer stands," but at least for purposes of this case, Bennis has taken to calling them "cabins." The court will go with "cabins," because they are enclosed under a roof, they have locking doors, glass windows, and woodstoves for heat. Each of the cabins is approximately 30 feet above the ground, and most of them have some area of deck at the level of the cabin. The main cabin is particularly home-like: it could sleep five, its floor is covered with carpet and tile, and it has a small kitchen. The main cabin has a spacious, wrap-around deck. The other five cabins are apparently somewhat more spartan, although Bennis's declaration implies that members of Bennis's family have slept in them. For purposes of Kleven's motion, the court will assume that all the cabins are essentially residences in which Bennis would have a reasonable expectation of privacy. There are no posted "Do Not Enter" or "No Trespassing" signs on the Bennis land.

Kleven is a private contractor engaged by the Town of Garfield to assess properties for taxes. On June 5, 2012, Kleven came to Bennis's property to perform a tax assessment without notifying Bennis or getting his consent or a warrant. Kleven found three of the cabins (not the main one) and the shed. Kleven measured each of the three cabins and took photographs. Kleven left the property without leaving notice of the assessment. Although

Kleven contends he mailed notice of the assessment to Bennis, Bennis denies receiving any mailed notice. For purposes of Kleven's motion, the court will assume that Kleven provided no notice either before or after the assessment, and that Bennis found out about Kleven's entry onto his property only when he received notice of the increased tax assessment. Relying on preexisting data about the property and his measurement and inspection of the cabins, Kleven assessed the newly discovered improvements at $22,600. Bennis's appeal to the Board of Review reduced his assessment by $7,800.

Bennis filed this suit under 42 U.S.C. § 1983, which raises a federal question; the court therefore has jurisdiction under 28 U.S.C. § 1331.

## ANALYSIS

**A. Summary judgment standard**

Kleven has moved for summary judgment that he did not conduct an illegal search, and he has supported his motion with admissible evidence. Thus, to avoid summary judgment, Bennis "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). He may not simply rely on the allegations in the pleadings to create such a dispute, but must "demonstrate that the record, taken as a whole, could permit a rational finder of fact to rule in [his] favor." *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). Because Bennis bears the burden of proving that Kleven violated his constitutional rights, he must present "sufficient evidence to create genuine issues of material fact to avoid summary judgment." *McAllister v. Price*, 615 F.3d 877, 881 (7th Cir. 2010).

### B.  Section 1983 prerequisites

The parties agree that Bennis has satisfied the prerequisites to a suit under 42 U.S.C. § 1983. Kleven was acting as an agent of the Town of Garfield, and thus he was acting under color of state law when he conducted the assessment. *See Chavez v. Ill. State Police*, 251 F.3d 612, 651 (7th Cir. 2001). Kleven himself conducted the assessment, so he would be the individual who personally committed any constitutional violation. *Id.*

### C.  Constitutional claims

The court must view the record in the light most favorable to Bennis. Accordingly, the court will assume that Kleven did not comply with the notice requirements for a tax assessment (because he did not leave a notice at the property after his inspection). Although irregularities in Kleven's tax assessment might violate state law, they do not establish a violation of his constitutional rights, in this case the Fourth Amendment. The Fourth Amendment provides, in relevant part, that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend IV. Fourth Amendment interests are particularly acute when the purported search involves the home and its curtilage, the area immediately surrounding and associated with it. *Florida v. Jardines*, 133 S. Ct. 1409, 1414 (2013) (citing *Oliver v. United States*, 466 U.S. 170, 176 (1984)).

As the party with the burden, Bennis must now adduce evidence to show that Kleven conducted a search. And that turns on a reasonably straightforward factual issue: did Kleven enter the cabins or the curtilage attached to them? Given the usual structures at issue here—

cabins on stilts 30 feet in the air—the curtilage is sharply defined: the deck area at the level of the cabins.[1]

Kleven denies that he went up the stairs at all, so he never entered the curtilage. He contends that he did all his observation and measuring from ground level. From a legal perspective, he relies the "open fields" doctrine, under which the government's intrusion upon open fields is not an unreasonable search proscribed by the Fourth Amendment. *Oliver*, 466 U.S. at 177. An open field is "any unoccupied or undeveloped area outside of the curtilage." *Id.* at 180 n.11. Kleven has his affidavit and deposition to provide the necessary evidentiary support that he did not go up the stairs. Dkt. 24, ¶ 13 (he did not "step onto" any stairs); Dkt. 27 (Kleven Dep. 51:24-52:8) (or "look in any windows"). According to Kleven, he merely walked on part of the property, looked at the stands, paced them off, measured them with a laser, and photographed them. Factually similar searches have been repeatedly upheld as constitutional.[2]

---

[1] The evidence in this case sets up a factual dispute: Kleven climbed the stairs or not. But even if Kleven entered Bennis's curtilage, his assessment does not necessarily constitute a search. *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 583-84 (6th Cir. 2005) (holding that "a property assessor does not conduct a Fourth Amendment search by entering the curtilage for the tax purpose of naked-eye observations of the house's plainly visible exterior attributes and dimensions—all without touching, entering or looking into the house"). The assessment was of an administrative—and not criminal—nature. Thus, it was subject to a relaxed reasonableness standard. *Camara v. Mun. Ct. of the City & Cty. of S.F.*, 387 U.S. 523, 536-37 (1967).

[2] *See, e.g., Air Pollution Variance Bd. of Colo. v. W. Alfalfa Corp.*, 416 U.S. 861, 864-65 (1974) (a health inspector entered property to inspect plumes of smoke emitted from a building); *Ehlers v. Bogue*, 626 F.2d 1314, 1315 (5th Cir. 1980) (per curiam) (a health inspector entered property to visually survey the outside of an apartment building). More intrusive administrative searches have also been upheld. *See, e.g., Artes-Roy v. City of Aspen*, 31 F.3d 958, 962 (10th Cir. 1994) (a building inspector pushed open a door and entered into a house to speak with workers there).

To survive summary judgment, Bennis must come forward with evidence sufficient to create a *genuine* dispute on this point. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby.*, 477 U.S. at 248. A mere scintilla of evidence is not enough. *Id*. at 252. The evidence must be sufficiently probative, in the aggregate, to lead a rational trier of fact to find for Bennis. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In light of these requirements, Bennis has a major problem here: no one else was present when Kleven entered his property. And even if Bennis were to cast doubt on Kleven's account of what happened, Bennis has no affirmative evidence of his own. Bennis contends that a reasonable juror could conclude from circumstantial evidence that Kleven has lied under oath, and that he actually "ascended to the level of the [cabins], measured them, and either looked into them or entered them or both." Dkt. 36, at 8. Bennis makes a five-point argument in support, but the court is not persuaded.

First, Bennis contends that Kleven's description of the deer stands as "very nice, actually" implies that Kleven must have seen the interiors of the cabins. Dkt. 31, at 26-27. But that statement raises no such inference. When Kleven went to the Bennis property, the only structures he expected were deer stands. Based exclusively on the exteriors as shown in Kleven's photographs, Dkt. 27-14, it is indisputable that the structures are indeed "very nice" for deer stands. Nothing about this statement implies that Kleven saw the interiors of the cabins.

Second, Bennis contends, based on Kleven's deposition testimony, that Kleven conducted a full revaluation of the Bennis property. Dkt. 31 at 27. This kind of assessment, according to Bennis, requires an assessment of the interior of any structures, and thus Kleven

6

would have had to climb the stairs and at least look into the windows. But this argument fails because it relies on an incomplete view of the legal framework of Kleven's work for the town. Kleven's deposition testimony is that the Town of Garfield did a revaluation in 2012. But Kleven explained that even if revaluation ordinarily required assessment of interiors, he could not inspect the interiors on the Bennis property because Wisconsin trespass law prevented him from doing so. Dkt. 27, at 51:14-52:21. Kleven's deposition testimony is that he did not do a full revaluation of the Bennis property, and it does not raise an inference that he violated the trespass statute so that he could do an assessment of the interiors of the cabins.

Bennis's third and fourth points are closely related. Bennis contends that Kleven's testimony regarding his measurements of the cabins shifted, making Kleven's testimony unreliable, so that a reasonable jury would be entitled to disbelieve his testimony that he did not climb the stairs. Dkt. 31, at 27-29. But Kleven's testimony is not inconsistent. Kleven testified at the Board of Review hearing that he measured the dimensions of the cabins, although he was not asked about the details of his measurement because that issue was not contested. Dkt. 33-2, at 28. Kleven testified in both his affidavit and his deposition that he measured the cabins from the ground, using a laser measuring device. Dkt. 24, ¶ 15; Dkt. 27, at 41:6-42:12. In deposition he testified extensively about the capabilities of the laser device and how he used it. The device he used was not a tripod-mounted laser that was capable of measuring the distance between two points that are approximately equidistant from the device. Dkt. 27, at 43:8-44:23. But he explained how he could use his laser device to measure dimensions by choosing the location from which to make measurements. *See* Dkt. 27-8 (annotated diagram). He testified that he did not specifically recall how he had measured the Bennis property four years earlier, and he also testified that with a small, simple structure like

the Bennis cabins, he could easily estimate their dimensions by eye, based on his experience. Dkt. 27, at 45:22-46:24. Kleven's testimony at the hearing, in his affidavit, and in his deposition is consistent. His admission that he could not remember all the details of his four-year old calculation of the dimensions of the Bennis cabins does not substantially undermine his credibility. And even if Bennis could undermine Kleven's credibility, Bennis still has no affirmative evidence that Kleven climbed the stairs to inspect the cabins.

Fifth, Bennis contends that Kleven told the Jackson County Sheriff that the cabins contained woodstoves, from which one could infer that Kleven had seen the interior of the cabins. Dkt. 31, at 29 (citing Dkt. 27-11, at 3). In his deposition, Kleven explained that he assumed that there were woodstoves because he saw stovepipes coming out of the cabins. Dkt. 27, at 31:7-10. Bennis argues that the presence of a stovepipe does not necessarily indicate a woodstove, because a stovepipe could be used to ventilate a *propane* device. The precision of Kleven's information "means he had to enter or at least look in the windows." Dkt. 37, at 29. Kleven reported accurate information about the interior of the Bennis cabins, but that does not compel the inference that he looked inside them. Woodstoves are ubiquitous in rural Wisconsin. So a natural inference to draw from a stovepipe coming from a tiny cabin on undeveloped property in rural Wisconsin is that the cabin has a woodstove, even if, strictly speaking, a propane heater is another possibility. This evidence is, at most, "merely colorable," which means that it is not enough to be substantially probative of the fact at issue. *Liberty Lobby*, 477 U.S. at 249-50.

Applying well-established principles of summary judgment methodology, the question is whether, considering the evidence as a whole, a reasonable jury could find by a preponderance of the evidence that Kleven climbed the stairs and looked inside the Bennis

cabins. No reasonable jury could make this finding on the evidence now before the court. Kleven's testimony is internally consistent, and Bennis has no external evidence to impeach it. The best Bennis can come up with is that Kleven's correct information about the woodstoves implies that he looked inside the cabins. But no reasonable jury could find that Kleven repeatedly lied under oath on the basis of this meager inference. A reasonable jury would have to conclude that it was more likely than not that Kleven never climbed the stairs, and that he simply assumed that the stovepipes he saw were connected to woodstoves.

Bennis makes one more pertinent argument: that Kleven's use of a laser measuring device is equivalent to the thermal imaging scanner used in *Kyllo v. United States*, 533 U.S. 27 (2001). Bennis contends that the laser device is technology not in general public use, and that training it on a home breaches our expectation of privacy. Dkt. 31, at 31. The court rejects both notions. First, laser measuring devices have long been commonplace and available at virtually any home supply store. Second, a laser measuring device is not capable of "explor[ing] details of the home that would previously have been unknowable without physical intrusion." *Kyllo*, 533 U.S. at 40. The laser measuring device is the functional equivalent of the tape measure, albeit one that can reach spots that might be less physically accessible. But it reaches only spots that are visible, so it affords no capacity to explore the otherwise unknowable, such as the invisible spaces within a home. The use of a laser measuring device does not constitute a search.

Because Bennis cannot establish that Kleven conducted a search, the court need not reach Bennis's arguments that Kleven violated Wisconsin law concerning the conduct of tax assessments.

ORDER

IT IS ORDERED that:

1. Defendant Eric Kleven's motion for summary judgment, Dkt. 20, is GRANTED.

2. The clerk or court is directed to enter judgment in favor of defendant and close this case.

Entered August 5, 2016.

                              BY THE COURT:

                              /s/

                              _____

                              JAMES D. PETERSON
                              District Judge